ROBERT L. LEACH, State Superintendent of Banking, et al., Appellants, v. BURTON & COMPANY STATE BANK OF KELLOGG et al., Appellees.

JUNE 26, 1928.

PETITION FOR REHEARING WITHDRAWN SEPTEMBER 18, 1928.

676

*John Fletcher*, Attorney-general, and *Korf & Korf*, for appellants.

*J. W. Burke, Cross & Hamill, M. R. Hammer, Jr., M. J. Carey, Ross R. Mowry, J. G. Shifflett*, and *C. V. Cox*, for appellees.

ALBERT, J.—I. Burton & Company State Bank of Kellogg, Iowa, closed its doors on January 13, 1925. Robert L. Leach, as superintendent of banking of the state of Iowa, took charge thereof, and on January 29, 1925, was duly appointed receiver of said bank.

The first claim considered herein is the claim of David Welle, and, as affecting the same matter, the claim of the Murphy Live Stock Shipping Association of Murphy, Iowa. This claim grew out of the following facts: Welle was the owner of a carload of hogs shipped for him by the Murphy Live Stock Shipping Association to the Chicago markets, and sold by the Chicago Producer's Commission Association of Chicago, and the proceeds thereof, amounting to $1,724.27, were paid in to the Northern Trust Company of Chicago on January 13, 1925. On the same date, the Northern Trust Company mailed a letter of advice to the Burton & Company State Bank, in which they recited that they had received the above amount from the Chicago Producer's Commission Association, and credited the Burton & Company State Bank for the account of the Murphy Live Stock Shipping Association of Kellogg, Iowa. This letter of advice was never received by the Burton Bank while a going concern, but was received by the superintendent of banking while he was in charge of the bank after it had closed, and some of his employees placed the same on the books of the Burton bank to the credit of the Murphy Live Stock Shipping Association. After the Burton & Company State Bank closed, the Northern Trust Company of Chicago charged to the account of the Burton bank a note held by the trust company against it in the sum of $4,000, and this

left a cash credit in the Trust Company in favor of the Burton bank in the sum of $1,497.93, which was later withdrawn by the receiver. It is alleged, under these facts, that this claim should have preference.

Some question is raised in argument as to whether Welle or the Murphy Live Stock Shipping Association is entitled to this claim. As we view it, the matter is wholly immaterial. The record concedes that the Murphy Live Stock Shipping Association shipped hogs for Welle, as his agent. He then would, in fact, be the real party in interest. The Murphy Live Stock Shipping Association admitted this, and filed its claim for the protection of Welle, so that it is a matter of indifference which claim is allowed, or whether both claims be allowed. So long as Welle is the real party in interest, we shall treat the claim as his, as did the district court.

It is claimed that this case is controlled by the ruling of this court in *In re Security Sav. Bank of Perry* (Iowa), 211 N. W. 233 (not officially reported), and *Leach v. State Bank of Redfield* (Iowa), 212 N. W. 390 (not officially reported). The situation in the present case, however, is wholly different, as we view it, from the cases just referred to. The real basis of every preferred claim in matters of this kind is that the funds passed into the hands of the bank wrongfully, and that they still remain in a common fund in the hands of the receiver, and that they can be withdrawn without prejudice to the rights of the depositors. Or, to put it in another way, the claimant says that his funds came into the hands of the bank as a trust fund, and that the bank (or, in this case, its receiver) still has this fund in its common fund, and the claimant wants his property. The evidence shows the above facts, together with knowledge on the part of the Burton & Company State Bank that the proceeds of this carload of hogs belonged to Welle. The funds were deposited with the Northern Trust Company of Chicago to the credit of the Burton bank, with instructions to credit the same to the Murphy Live Stock Shipping Association. Therefore, the Burton bank, when the fund reached it, would receive the same with knowledge that this fund belonged to Welle. The bank account with the Northern Trust Company of Chicago was credited with this amount on the last day the Burton bank transacted business; while, as stated, the Burton bank was not advised of such credit

until the following day. By reason of certain deductions made by the Chicago bank, which are argued in the case to have been unlawfully made, the proceeds of the sale of hogs which actually reached the hands of the receiver were $1,497.93. We think, under this showing, that Welle has established his claim, and is entitled to a preference against the receiver in the last named amount. Whatever the difference was between Welle's claim as actually made and the aforesaid $1,497.93, it is shown to have been dissipated. Whether rightfully or wrongfully we are not concerned, because the receiver could not be held responsible or chargeable with the wrongful act of the Chicago bank, if any. The district court allowed this claim in the full amount. We think it should only have been allowed in the sum of $1,497.93, and the order of the district court will be modified accordingly.

II. There are 47 claims filed herein, amounting to approximately $44,000, the facts in each being substantially the same. These claims grow out of the following facts:

Each of the claimants was the holder of various bonds issued by the United States government, which were left with the Burton & Company State Bank for safe-keeping, and in which a certificate or receipt was issued, in substance identical with the one set out in the case of *In re Insolvency of Farmers & Merch. Sav. Bank of Mount Pleasant*, 202 Iowa 859. The evidence in this case is similar to that in said case, and leaves no other conclusion than that the bonds were left only for safe-keeping; and, as held in the above case, we hold here that the relation between the bank and each bondholder was that of bailor and bailee. None of the claimants herein were able to identify their bonds, either at the time they were deposited or later. We have before us the books of the Burton & Company State Bank, showing customers' bonds held by the bank, but these books do not in any way identify any particular bonds. They are treated in the record wholly in a lump sum. This is equally true of all bonds put up as collateral security by the Burton bank with its correspondent banks, so that the record is wholly silent in the matter of identification of any bonds involved in this litigation.

It appears from the record that in 1918 there were on deposit in the Burton bank customers' government bonds in the

amount of $12,000. The books show a gradual increase in this account, which at one time reached the sum of about $340,000. The books do not show who the owners of these bonds were, or their addresses, or give any other method of identification. This account then shows a decrease to the day of the closing of the bank, when the account shows the amount of customers' bonds on hand to be $53,200; whereas, in truth and in fact, at the time this receiver took charge, there were bonds on hand in the bank to the amount of only $1,050. The record also shows that at one time the bank was the owner of about $116,000 in government bonds, most of same being registered bonds. During all of the time from 1918 on, this bank seems to have been a heavy borrower.

So far as the bond question is concerned, the Burton bank had placed with its correspondent banks at one time, as collateral, a sum of about $265,000. To trace any of these bonds is impossible. They were changed back and forth from the Burton bank to its correspondent banks, and from one correspondent bank to another, with all the changes of a kaleidoscope. For instance, in March, 1921, there were $110,000 with the Iowa National Bank of Des Moines, $35,000 with the Live Stock Exchange Bank of Chicago, $71,800 with the Des Moines National Bank, and $60,000 with the First Trust & Savings Bank. In March, 1922, there were $40,000 with the Iowa National Bank of Des Moines, $59,000 with the Des Moines National Bank, and the Burton bank reported on hand $24,150. Of the amount on hand and with the aforesaid banks on that date, $70,000 were in registered bonds. At times, coupon bonds were changed into registered bonds, and registered bonds into coupon bonds. In all of these transactions there are no means of identification. They are treated in lump sums of so much money, in some instances, showing the bonds that were registered and the coupon bonds. When the bank closed, the only outstanding bonds seem to have been those in the Iowa National Bank of Des Moines, amounting to the aforesaid $37,400. These bonds were converted into cash by the Iowa National Bank shortly after the closing of the Burton bank, and if the claimants herein are entitled to anything, they must realize by creating some sort of trust with reference to this last named amount.

It is strenuously urged by appellants that the claimants

have not traced their property into the hands of the receiver to the augmentation of the estate which he holds as receiver for the Burton bank. As heretofore suggested, the record is wholly silent as to identification of any of these bonds by the respective claimants, and there is no evidence whatever to show that any of the bonds deposited in the Burton bank by its customers were ever put with the Iowa National Bank of Des Moines as collateral. No claimant is able to point to the Iowa National Bank and say that "it has now in its possession the proceeds of a bond of which I am the owner." The burden of proof is upon each claimant herein to establish this fact before he can successfully maintain any claim against the receiver herein (except the claim of a general creditor).

To summarize the whole situation: The evidence quite satisfactorily establishes that unidentified bonds were deposited by these various claimants with the Burton & Company State Bank of Kellogg for safe-keeping, thus creating the relation of bailor and bailee. The record also shows that the Burton & Company State Bank had put up government bonds as collateral security with various banks at various times, but there is nothing whatever in the record to show that the bonds that were in the hands of the Iowa National Bank at the time the receiver took charge were the bonds, or any of the bonds, that belonged to these respective claimants The claimants, therefore, were not entitled to a preference, and the district court should not have allowed the preference claim.—*Modified and affirmed in part; reversed in part.*

STEVENS, C. J., and DE GRAFF, MORLING, and KINDIG, JJ., concur.